FILED
2002 Jun -6 AM 8:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

JANICE INGLE,

    Plaintiff,

v.   Civil Action No. CV-01-J-1741-J

CITY OF WINFIELD, et al.,

    Defendants.

ENTERED
JUN 6 2002

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 23), memorandum of law and evidence submitted in support of said motion. The plaintiff submitted an opposition and evidence and the defendants thereafter submitted a reply. The court has reviewed the motion, the memoranda of law, and the evidentiary submissions of the parties. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the defendants' motion for summary judgment is due to be **GRANTED**.

### I. Factual Background

Plaintiff alleges that the defendant City of Winfield and its police officer Chris McCollum violated her rights by entering and searching her home without her permission while she was sleeping.[1] Amended Complaint (doc. 10) at ¶¶ 5-6. The plaintiff states that

---

[1] The case was originally filed in the Circuit Court of Fayette County and removed here by the defendants on the theory that the plaintiff's claims arise under federal law. *See* Notice of Removal (doc. 1) at ¶ 3. Defendant police officer Scott Welch was later dismissed by agreement of the parties (doc. 21).

this unlawful search, in addition to violating her Fourth Amendment rights, caused her emotional stress, humiliation, anxiety and embarrassment. She sues the individual defendants for trespass (Count I); violation of her constitutional right against unreasonable search (Count III); the City of Winfield for negligent hiring, training and supervision (Count II); and all defendants for emotional distress (Count IV).

The facts of this case arise out of the pursuit of non-party Eddie Ingle (the plaintiff's son)[2] by Officers McCollum and Welch pursuant to a 911 call reporting a black Camero driving recklessly. McCollum depo. at 31-32. The officers located the vehicle and recognized the driver as Eddie Ingle. *Id.* at 32-33, 37. When the officers turned on their blue lights, Eddie drove off at a high rate of speed. *Id.* at 34. Eddie then came almost to a stop and jumped out of his vehicle. *Id.* at 35. Because the car was still moving, without a driver, the officers used their vehicle to stop the Camero. *Id.* at 36-37.

McCollum saw Eddie rolling around in kudzu while he and officer Welch arrested the other two occupants of the car. McCollum depo. at 38. This occurred about 75 to 100 yards from the plaintiff's house. *Id.* Eddie then got up and ran towards the plaintiff's house. *Id.* at 40. McCollum chased him, but lost sight of him after Eddie was on the front porch. *Id.* at 40-42. McCollum believed he heard a door open, but did not see Eddie enter the house. *Id.* at 42-43. He thought Eddie went in the house. *See* defendants' exhibit C.

---

[2]*See* plaintiff depo. at 13.

2

When McCollum got to the front door, he looked in to see if he could see anyone, and knocked. McCollum depo. at 44. He turned the knob, the door opened, and he said "Police. Eddie, come on out." *Id.* at 44. He did not hear anything. *Id.* He did not think anyone lived in the house because of its appearance.[3] *Id*; *see also* defendants' exhibit C. No interior lights were on. McCollum depo. at 53-54. He walked slowly down the hallway, and when he got to the bedroom, saw someone in the bed, which was the plaintiff. *Id.* at 44. McCollum states that she raised up, he stepped back and said, "Police. I was chasing somebody and I believe he ran in your house." *Id.* The plaintiff asked if he had caught him, and McCollum responded "No." *Id.* McCollum asked the plaintiff if he could look and she said "Yes, please do." *Id.* at 47. He states he was in the house about a minute or two. *Id.* at 52, 54. Officer Welch never entered the house. *Id.* at 54-55. Eddie was not found in the house. *Id.* at 52.

Had he known the house was inhabited, he would have approached the situation differently. McCollum depo. at 49. However, he also stated "But if somebody was in there and this person I was chasing went in there and wasn't supposed to be there, what do I do then, leave him in there with these people? Maybe he's got them hostage. Everything runs through your mind." *Id.* at 49.

An arrest warrant for Eddie was outstanding at the time for felony DUI, but McCollum did not have a warrant with him. McCollum depo. at 45. He knew Eddie had

---

[3]The plaintiff had been living in the house for nine months when this incident occurred. Plaintiff depo. at 52.

3

been arrested for felony DUI in the past as well, giving him reason to believe that Eddie was in the process of committing another felony DUI. *Id.* McCollum testified that he arrived at this conclusion because "I know Eddie for one thing. I know how he is, and he's a habitual drunkard and has been arrested several times for DUI .... Usually Eddie don't run unless he's drunk. Every time we've arrested him, unless he's drunk, we don't have no problem out of him. But when he's drunk, he does stuff like this .... [also] his condition when he was in the kudzu patch and trying to get up, it seemed to me like he was intoxicated." *Id.* at 46.

The plaintiff asserts that she was awoken about 1:00 a.m. by a bright light. Plaintiff depo. at 28-29. McCollum told her he was just making sure no one was hurt or in there.[4] *Id.* at 29-30. He was looking in the closet and she told him to get the light out of her eyes. *Id.* at 29. Although McCollum was already looking around, she may have given him permission to search her daughter's room. *Id.* at 86. He asked her who lived there and then left. *Id.* at 30. At some point, he also told her there had been a wreck, and she asked him "if y'all were chasing them, you know, how did they hit y'all?" *Id.* at 85-86. She got dressed and went in the living room and saw McCollum there. *Id.* at 30. She asked him if he was after the rapist, but he did not tell her anything. *Id.* at 30, 58. McCollum alleges he told her the story about the rapist was made up. Defendant's exhibit C.

---

[4]The plaintiff and McCollum knew each other prior to this occasion. *See e.g.*, plaintiff depo. at 36.

4

Seeing the officer, even though she knew him, scared her because he would not tell her what he was doing there. Plaintiff depo. at 59. He was "just running around and looking." *Id*. at 59. She did not tell McCollum to leave because she was "scared to death." *Id.* at 62.

The plaintiff testified that McCollum went outside, then came back in the house. Plaintiff depo at 63. She looked outside and saw "[t]here was cops everywhere, lights shining in all my windows, and they were running around like something crazy." *Id.* In fact, she saw officers "everywhere." *Id*. at 63-64. At some point, McCollum came back in her house and told her he was looking for Eddie. *Id*. at 65-66. She did not see Eddie that night. *Id* at 66. Eddie told her several days later the police chased him and he ran through the woods because they had a warrant for him for old fines. *Id*. at 68. She testified that Eddie running through the woods to escape the officers did not seem odd to her because "if he had any kind of warrant, he would run from the cops." *Id*. at 75.

The plaintiff testified that McCollum was wrong because "he didn't have a search warrant, and I don't know whether he knocked on the door or not. Don't even know if he had been in the house a while before we were woke up. And I should have been given a reason he was there." *Id.* at 76-77. She stated that "as many officers that were there, they could have guarded my house till they got a search warrant. I wouldn't have objected at all because he wasn't in there anyhow." *Id.* at 78. She clarified that "if they had done it right" she would have not objected at all to the search, but they did not have a warrant and scared

5

her." *Id.* at 79. Apparently, a warrant would have made her feel better because it would have shown the reason they were there. *Id.* at 79.

The plaintiff claims she was embarrassed because she was in bed in the wee hours of the morning. *Id.* at 79. She also suffered stress and anxiety because her heart was pounding, her palms were sweaty, and afterward, she had a headache. *Id.* at 80. This incident has also made her nervous and she now checks to make sure her door is locked. *Id.* at 90.

### III. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. Pro. 56(e)). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

### III. Legal Analysis

Because this case comes before the court on the defendants' motion for summary judgment, the court has considered all of the evidence in the light most favorable to the plaintiff.

*Fourth Amendment claim*[5]

The plaintiff argues that she did not consent to the search of her home by defendant McCollum. Plaintiff's opposition at 2. She argues that McCollum's entry into her home

---

[5]Although the plaintiff alleged violations of the Alabama Constitution for the warrantless entry into her home, no party has made any argument to the court concerning such a claim. The plaintiff having failed to address such claim in opposition to the defendants' motion for summary judgment on all counts of the complaint, the court finds any such cause of action under the Alabama Constitution has been abandoned by the plaintiff.

constituted a violation of her Fourth Amendment right to be free from unreasonable searches. Plaintiff's opposition at 8. Defendants argue that because officer McCollum was in "hot pursuit" of a suspect, and had a reasonable belief that suspect entered the house, McCollum was justified in entering the house without a warrant. Defendant's brief at 13.

Warrantless searches of a residence are presumptively unreasonable unless the government entity involved can demonstrate exigent circumstances justified a warrantless entry and search. *Welsh v. Wisconson*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Payton v. New York*, 445 U.S. 573, 586, 590, 100 S.Ct. 1371, 1380, 1382, 63 L.Ed.2d 639 (1980). To justify such a search, defendants must show the existence of both probable cause and exigent circumstances. *United States v. Rogers*, 924 F.2d 219 (11th Cir.1991); cert. denied, 501 U.S. 1221, 111 S.Ct. 2834, 115 L.Ed.2d 1003 (1991). To establish probable cause, defendants must show only that the facts available to the officer at the moment of the search would warrant a person of reasonable caution to believe the action taken by the officer was appropriate. *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997); *Lott v. State*, 456 So.2d 857 (Ala.Cr.App.1984).

McCollum states that he chased Eddie Ingle believing him to be drunk and believing him to have committed a felony by operating a vehicle in that condition.[6] He believed the house he was entering to be unoccupied and further believed Eddie Ingle had entered that house. No evidence controverts these facts. Given these facts, the court finds that

---

[6]McCollum could reasonably believe Eddie Ingle committed a number of other crimes as well from the facts in evidence.

McCollum had probable cause to believe his action in entering the home was reasonable at the time he did so.[7] *See Gouin v. State*, 581 So.2d 1279 (Ala.Cr.App.1991).

The Eleventh Circuit Court of Appeals has stated that exigent circumstances do not require "hot pursuit" of a fleeing criminal. *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir.1987). Factors which indicate exigent circumstances include the gravity of the offense with which the suspect is to be charged; probable cause to believe that the suspect committed the crime; strong reason to believe that the suspect is in the premises being entered; and likelihood that delay could cause the escape of the suspect or the destruction of essential evidence. *Id.*

The court finds that exigent circumstances existed to justify McCollum's entering the house without a warrant. He was in hot pursuit of Eddie Ingle, whom he believed to have committed a felony. Clearly, McCollum believed that Eddie entered the house and could be endangering the occupants of the house, if it was indeed occupied. *See Warden v. Hayden*, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782 (1967). If McCollum had left to obtain a warrant, Eddie Ingle would likely have escaped, had he been present in the house.

Most importantly, in spite of her argument otherwise, the court finds no evidence that the plaintiff did not consent to the search of her home. Her own testimony establishes that, upon finding a police officer in her home, she gave him permission to continue searching and

---

[7]The court notes that, upon learning Eddie Ingle's mother lived in the house, McCollum had additional probable cause to believe that Eddie had entered the house and was hiding there.

even questioned him about who he was looking for and the wreck which had taken place.[8] Similarly, upon finding the house to be occupied, McCollum requested the plaintiff consent to his continuing the search, to which she replied "Please do." The fact that the plaintiff was frightened simply is not relevant to the question of whether the search of her home by McCollum was reasonable or authorized.

Furthermore, the court questions whether the plaintiff's Fourth Amendment claim is properly before it as plaintiff fails to state a cause of action under 42 U.S.C. § 1983 or the Fourteenth Amendment. "[Section] 1983 ... provides "a method for vindicating federal rights elsewhere conferred."" *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)). *See also Lowe v. Aldridge*, 958 F.2d 1565, 1569 (11th Cir. 1992) ("Section 1983 affords relief for individuals who have been deprived of a constitutional right by an individual who was acting under color of state law (citation omitted)."

"By its own terms, the fourth amendment protects the citizenry only against unlawful actions by federal officials; the due process clause of the fourteenth amendment to the Constitution, however, incorporates the guarantees of the fourth amendment with regard to unlawful actions by state and municipal actors." *Kerr v. City of West Palm Beach*, 875 F.2d

---

[8] The fact that plaintiff asserts McCollum was in her home for 30 minutes while McCollum claims it was two minutes is not a genuine issue of **material** fact. Whether two minutes or thirty minutes, the issue before this court is whether the plaintiff consented to this search. Finding that she did, the amount of time the search took is not relevant, in light of the lack of evidence that the plaintiff at some point withdrew her consent.

1546, 1548 n. 4 (11th Cir.1989); citing *Wolf v. Colorado*, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949).

The court finding that 1) the search of the plaintiff's home without a warrant for a fleeing felon was not unreasonable in light of the circumstances surrounding the search, and hence no deprivation of a constitutional right; 2) the plaintiff consented to the search of her home and 3) that this claim is not properly before it, the court does not reach the issue of qualified immunity.

*State Law Claims*

The plaintiff having failed to address her state law claims for emotional distress, trespass and negligent hiring, training and supervision in her opposition to the defendants' motion for summary judgment, the court finds said claims to be abandoned.

## IV. Conclusion

The court having considered the foregoing, and being of the opinion the defendants; motion for summary judgment is due to be granted on all counts of the amended complaint;

It is therefore **ORDERED** by the court that the defendants' motion for summary judgment be and hereby is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 5 day of June, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE